**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| v. | ) | Criminal Case No. 13-61 (RBW) |
| ALDWIN VEGA, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

The defendant, Aldwin Vega, was found guilty by a jury of one count of "[c]onspiracy to distribute and possess with intent to distribute one kilogram or more of heroin, a Schedule I controlled substance[,] in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), and 851, and was sentenced to 262 months imprisonment, ten years of supervised release, and was ordered to pay a $100 assessment. See Judgment in a Criminal Case ("Judgment") at 1–3, 6 (Dec 14, 2018), ECF No. 754. Currently pending before the Court is the defendant's 28 U.S.C. § 2255 motion challenging his appellate counsel's effective assistance of counsel before the Third Circuit. See generally Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Def.'s Mot."), ECF No. 861. Upon careful consideration of the parties' submissions,[1] the Court concludes that it must deny the defendant's motion because: (1) the defendant's appellate counsel was not ineffective for failing to raise Fifth Amendment due process arguments on appeal since such arguments were dependent on a warrant application

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the defendant's Memorandum in Support of Petition for Writ of Haveas Corpus ("Def.'s Mem."), ECF No. 863; (2) Def.'s Mem., Exhibit ("Ex.") A ("Application for Search Warrant and Authorization") at 1, ECF No. 863-1 (3) Def.'s Mem., Ex. B (Declaration in Support of Motion to Vacate) ("Vega Decl."), ECF No. 863-2; (4) the government's Response to Motion to Vacate ("Gov't's Opp'n"), ECF No. 866; (5) Gov't's Opp'n, Ex. 1 (Uncontested Motion To Stay The Briefing Schedule And For Summary Action To Vacate Appellant's Convictions And Sentences And Remand For Further Proceedings) ("Gov't's Mot. to Vacate"), ECF No. 866-1; and (6) the defendant's Reply Memorandum in Support of Petition for Writ of Habeas Corpus ("Def.'s Reply"), ECF No. 867.

which the defendant did not have standing to challenge; and (2) the defendant cannot demonstrate that his appellate counsel was ineffective for failing to raise a challenge to the government's representation made in his co-defendant's case that it would not use evidence in "any other proceeding" to mean that the government would not use such evidence against the defendant.

## I. BACKGROUND

In September 2012, an FBI Violent Crimes and Narcotics task force initiated a wiretap investigation on a Munhall/Homestead-area gang in Allegheny County, Pennsylvania. See Transcript of Jury Trial Proceedings Before the Honorable Reggie B. Walton (Sept. 11, 2017) ("Sept. 11, 2017 Trial Tr.") at 2:19–3:15, ECF No. 765. As part of the investigation, law enforcement officers became aware that an individual named Santino Drew was allegedly involved in the distribution of heroin in the Pittsburgh area and was staying at a Comfort Inn hotel. See Sept. 11, 2017 Trial Tr. at 5:25–8:7, 15:7–15:12; Transcript of Pretrial Motions Proceedings Before the Honorable Cathy Bissoon (Apr. 1, 2015) ("Apr. 1, 2015 Trial Tr.") at 55:3–55:8, ECF No. 603. In order to protect their federal investigation, the officers made the decision to seek a search and seizure warrant for Drew's Comfort Inn hotel room from a Pennsylvania state court magistrate judge instead of a federal magistrate judge. See id. at 38:4–38:8, 26:14–15, 26:23–25, 27:15–28:22, 36:8–36:15, 43:10–43:23. According to one of the task force officers, seeking a warrant from a state court magistrate judge would protect the federal investigation because it was "known that the FBI [and the Drug Enforcement Administration] ha[d] been doing many wiretaps" in Allegheny County.[2] See id. at 38:4–38:19. Subsequently,

[2] Officers also "disguise[d] the source of information" included in the search warrant affidavit because they did not want to disclose that the source of their probable cause information was "obtained from wiretaps[.]" See Apr. 1, 2015 Trial Tr. at 44:13–44:20; see generally Application for Search Warrant and Authorization.

on the evening of January 30, 2013, the officers traveled to the home of the state court magistrate judge who signed the warrant application in the early morning hours of January 31, 2013. Id. at 26:14–15, 26:23–25, 27:15–28:22, 36:8–36:15; Application for Search Warrant and Authorization at 1. After obtaining the warrant, the officers immediately proceeded to the Comfort Inn hotel where Drew was staying.

During the execution of the search warrant, the task force officers collected 519 bricks of heroin from the Comfort Inn hotel, Transcript of Jury Trial Proceedings Before the Honorable Reggie B. Walton (Sept. 6, 2017) ("Sept. 6, 2017 Trial Tr.") at 69:21–69:22, ECF No. 762, and arrested Drew in the hotel's laundry room. See id. at 65:21–67:4.[3] After submitting the packages of heroin for fingerprint analysis to the FBI's lab in Quantico, Virginia, law enforcement officers learned that the defendant's fingerprints were present on the packages of heroin, id. at 79:13–80:7, and that the defendant was allegedly a heroin supplier. Transcript of Jury Trial Proceedings Before the Honorable Reggie B. Walton (Sept. 7, 2017) ("Sept. 7, 2017 Trial Tr.") at 126:14–126:23, ECF No. 763. Subsequently, on December 3, 2014, the defendant was indicted and charged with one count of conspiracy to distribute, and possession with intent to distribute, one kilogram or more of heroin, a Schedule I controlled substance, "[f]rom in and around the fall of 2011, and continuing thereafter to in and around February 2013[,]" in violation of 21 U.S.C. § 846. See Second Superseding Indictment Memorandum ("Second Superseding Indictment") at 1, ECF No. 350.

The defendant's co-defendant, Drew, was prosecuted in a separate proceeding and he challenged the task force's application for the search warrant and seizure of the drugs discovered

[3] The defendant was not present at the hotel, or in the Pittsburgh area, when officers arrested Drew on the morning of January 31, 2013. Sept. 6, 2017 Trial Tr. at 95:17–95:21.

in his hotel room. After another member of this court denied Drew's motion to suppress, he was convicted by a jury of conspiring to possess heroin with the intent to distribute and possession of heroin with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(i), and 846. See generally Verdict Slip, United States v. Drew, No. 2:13-cr-61, ECF No. 516; Second Superseding Indictment. Drew appealed his conviction to the Third Circuit, arguing in part that (1) the "district court abus[ed] its discretion in denying [ ] [his] motion to suppress based on the government's violation of [Federal Rule of Criminal Procedure] Rule 41(b), given that the government, for tactical reasons, deliberately obtained a search warrant from a state court judge rather than an available federal magistrate"; and (2) "the district court abuse[d] its discretion in denying [ ] Drew's motion to suppress pursuant to Franks v. Delaware, given that the search warrant application contained affirmative and material misrepresentations concerning the government's 'source of information,' which was not a human informant, as the application strongly suggested, but a wiretap[.]" See Appellant's Opening Br. at 2, United States v. Drew, No. 15-3245 (3d Cir. May. 20, 2016), ECF No. 003112302852. Before Drew's appeal was resolved, the government filed a motion with the Third Circuit seeking to vacate Drew's conviction, and to have his case remanded to the district court. See generally Gov't's Mot. to Vacate. The government indicated in its motion that "it w[ould] not offer the evidence seized from the hotel room pursuant to the search warrant issued on January 31, 201[3] at any further proceedings." See Gov't's Mot. to Vacate ¶ 3. The Third Circuit granted the government's motion and remanded the case to the district court. Mandate (Judgment) (Aug. 17, 2016), ECF No. 644. Subsequently, Drew pleaded guilty to the lesser included offense of conspiracy to distribute 100 Grams or more of heroin, in violation of 21 U.S.C. § 846. See Judgment In A

Criminal Case at 1, U.S. v. Drew, ECF No. 665; Change of Plea at 1, U.S. v. Drew, ECF No. 663.

Immediately after the Judgment was entered in Drew's case, the litigation of the defendant's case proceeded with the filing of pre-trial motions. In the defendant's pre-trial motions, he argued, inter alia, (1) that the indictment against him should have been "dismissed with prejudice due to prosecutorial misconduct based upon the substantial irregularities in the application for and issuance of the search warrant by a state court judge in a federal investigation in violation of [the] defendant['s] . . . Fourth Amendment search and seizure rights and in violation of his [Fifth Amendment] due process fundamental fairness rights"; and (2) that "the heroin seized during the Comfort Inn search should [have been] suppressed pursuant to Franks v. Delaware . . . given that the search warrant application contained affirmative and material misrepresentations concerning the government's 'source of information,' which was not a human informant, as the application strongly suggests, but a wiretap[.]" Defendant Aldwin Vega's Memorandum Of Law And Appendix In Support Of Pretrial Motions ("Def.'s Pretrial Mem.") at 8, 29, ECF No. 669 (capitalization modified). This Court denied the defendant's motion finding, inter alia, that Vega lacked "standing to challenge the search of the hotel room[, and the items seized in that room,] as a result of not having a reasonable expectation of privacy in regards to that guest room." Order at 5 (April 27, 2017), ECF No. 702 ("2017 Suppression Order").

After the jury found the defendant guilty, he appealed his sentence to the Third Circuit, arguing, inter alia, that the Court erroneously calculated the sentencing guideline range because (1) the defendant's prior conviction was not a predicate felony drug offense under 21 U.S.C. § 841(b)(1)(A), and (2) the defendant was not an organizer or leader under U.S.S.G. § 3B1.1. See Appellant's Br. at 7–8, 19, United States v. Vega, No. 18-3764 (3d Cir. May. 28, 2021), ECF

No. 60. The defendant also argued that his sentence was substantively unreasonable because, although this Court found that the defendant lacked "standing to challenge the warrant [ ] for the January 2013 hotel room search, . . . the government hypocritically offered the evidence [seized from the hotel room] at [the defendant]'s trial" even though the government previously represented to the Third Circuit in Drew's case that it would not "offer the evidence . . . at any further proceedings." Id. at 29 n.11.

Then, despite being represented by the Federal Public Defender for the District of Delaware ("FPD"), on June 10, 2021, the defendant retained private counsel to file a supplemental opening brief in the Third Circuit. See Clerk's Order (June 20, 2021), United States v. Vega, No. 18-3764, ECF No. 76. According to the defendant, he "was adamant with [the] FPD that [his] brief on appeal include a challenge to [the] admission of the evidence seized pursuant to the [alleged] illegal search[,] including on due process grounds." Vega Decl. ¶ 6. However, the defendant declares that his FPD appellate counsel "would not raise the issue." Id. Based on that refusal, the defendant "told [his FPD counsel] that she and [the defendant] had irreconcilable differences" and that the defendant "wanted a new attorney appointed" to represent him. Id. But, the defendant declares that his FPD counsel "did not move the [Third Circuit] to withdraw as [the defendant's] counsel, move the [Third Circuit] for appointment of a new lawyer, or otherwise make any motion that cited [the] irreconcilable differences." Id. ¶ 7. Consequently, the defendant's family "helped [him] engage the services of" private counsel. Id. ¶ 9.

The defendant's retained counsel then represented him on appeal, and the FPD's representation of the defendant was terminated. See Clerk's Order (July 28, 2021), United States v. Vega, No. 18-3764, ECF No. 80. On August 25, 2021, the defendant moved "for leave to file

an overlength [s]ubstitute [o]pening [b]rief . . . along with a [s]upplemental [a]ppendix." Motion Of Defendant-Appellant Aldwin Vega For Leave To File An Overlength (19,503 Words) Substitute Opening Brief Raising All Issues Along With Leave To File A Supplemental Appendix at 1, United States v. Vega, No. 18-3764, ECF No. 81. The Third Circuit denied the defendant's motion and struck the defendant's substitute opening brief and supplemental appendix from the record. Order (Oct. 28, 2021) at 1, United States v. Vega, 18-3764, ECF No. 91. After considering the merits of the arguments raised in the defendant's opening brief regarding the challenges to his sentence, the Third Circuit affirmed the sentence imposed by this Court. See United States v. Vega, No. 18-3764, 2022 WL 1552993, at *3 (3d Cir. 2022).

The defendant now moves this Court to vacate his sentence under 28 U.S.C. § 2255. See Def.'s Mot. at 1. He argues that he is entitled to the requested relief because his appellate counsel was ineffective by failing to raise various claims pursuant to his Fifth Amendment due process rights and failing to challenge the government's purported breach of the promise made in his co-defendant's case regarding use of the evidence seized in his co-defendant's hotel room. See Def.'s Mem. at 18 (capitalization modified).

## II. STANDARD OF REVIEW

A federal prisoner may move to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255 on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. "As a collateral challenge, a motion pursuant to [§ 2255] is reviewed much less favorably than a direct appeal of the sentence." United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014). "Indeed, relief under § 2255 is available only when 'the claimed error

of law was a fundamental defect [that] inherently results in a complete miscarriage of justice, and . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ . . . is apparent.'" Id. (internal quotation marks omitted) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)).

A "district court is required to hold an evidentiary hearing" regarding a § 2255 motion, "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." United States v. Booth, 432 F.3d 542, 545–46 (3d Cir. 2005) (internal quotation marks omitted). In considering a § 2255 motion, "the [C]ourt must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." Id. at 545 (internal quotation marks omitted). A "[§] 2255 motion may be dismissed without a hearing if: (1) its allegations, accepted as true, would not entitle [the p]etitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." United States v. Potter, No. 18-cr-279, 2023 WL 1996695, at *3 (W.D. Pa. Feb. 14, 2023) (quoting United States v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005)). Here, the Court concludes that an evidentiary hearing is not necessary because all of the relevant evidence needed to adjudicate the defendant's claims are before the Court. Accordingly, there is no need to further develop the factual record through an evidentiary hearing. Booth, 432 F.3d at 546 ("[T]he district court [only] abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief.").

Additionally, pursuant to the Sixth Amendment, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the [a]ssistance of [c]ounsel for his [or her] defence." U.S. Const. amend. VI. A § 2255 habeas petitioner raising an ineffective assistance of counsel

claim must show that: (1) "counsel's performance was deficient;" and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Ineffective assistance of appellate counsel claims are governed by the same Strickland standard that governs ineffective assistance of trial counsel claims. United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002). "Precedent has long recognized that a § 2255 motion is a proper and indeed the preferred vehicle for a federal prisoner to allege ineffective assistance of counsel. . . . And that is especially so for a claim of ineffective assistance of appellate counsel because in representing a prisoner on direct appeal, counsel cannot be expected to advocate against his or her own effectiveness." United States v. Braddy, 837 F.App'x 112, 115–116 (3d Cir. 2020) (internal citations and quotation marks omitted).

In order to show that counsel's performance was deficient, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness[,]" id. at 688, and overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Specifically, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Id. at 690. To satisfy both prongs, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" id. at 694, and reasonable probability in this context means "a probability sufficient to undermine confidence in the outcome." Id. Therefore, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding[,]" id. at 693, instead, the defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair" criminal process. Id. at 687.

## III. ANALYSIS

The defendant argues that the Court should vacate his conviction and dismiss the indictment against him with prejudice because his appellate counsel was ineffective because she failed to raise Fifth Amendment due process challenges to the government's use of evidence obtained from the Comfort Inn search of Drew's room, which the defendant argues was illegally obtained. See Def.'s Mem. at 21. Specifically, the defendant argues that he has standing to challenge the government's warrant application to search and seize evidence from Drew's hotel room because of the government's alleged deception to obtain the warrant, and that its actions thereafter to cover up its conduct amounted to prosecutorial misconduct that violated the defendant's due process rights. See id. at 21–27. The government argues that the defendant's claim should be rejected because (1) he failed to raise the argument with this Court that the government employed outrageous law enforcement techniques that violated his Fifth Amendment due process rights and therefore the argument was waived; (2) even if the defendant raised the claim before the Court, he would not have succeeded because he lacks standing to challenge the search and seizure of the drugs from Drew's Comfort Inn room, and (3) the record does not support his claim alleging outrageous prosecutorial misconduct. See Gov't's Opp'n at 9–10. Additionally, the government contends that its assurance to the Third Circuit in Drew's case that it would not use the evidence obtained from the Comfort Inn hotel room "at any further proceedings" only applied to proceedings in Drew's case and was not meant to apply to the case of anyone else. See id. at 17 (citing Gov't's Mot. to Vacate ¶ 3). And, for all these reasons, the government also argues that the defendant's claim must fail because he cannot demonstrate that his appellate counsel's representation prejudiced him. Id. at 9. The Court agrees with the government and finds that the defendant lacks standing to challenge the warrant application and

the evidence seized in the Comfort Inn hotel, and accordingly he was not prejudiced by his appellate counsel's decision not to raise these arguments on appeal. Moreover, the Court finds that the defendant's argument that his appellate counsel was ineffective for failing to raise a Fifth Amendment due process claim based on an alleged promise given by the government in his co-defendant's case lacks merit.

**A. The Defendant's Claim That His FPD Appellate Counsel Was Ineffective for Failing to Raise Fifth Amendment Due Process Challenges Based on (i) Alleged False Representations in the Warrant Application and Violation of Rule 41(b), (ii) Outrageous Government Misconduct, and (iii) the Government's Failure to Abide by Its Promise in His Co-defendant's Case**

The defendant advances three related theories in support of his claim that his FPD appellate counsel was ineffective in her representation of him before the Third Circuit. See generally Def.'s Mem. Specifically, he contends that his FPD appellate counsel should have pursued a Fifth Amendment due process challenge based on (1) the government's alleged use of false representations in the warrant application to acquire the warrant to search Drew's hotel room and a violation of the Federal Rule of Criminal Procedure 41(b); (2) law enforcement's and the prosecution's alleged outrageous conduct; and (3) the government's alleged failure to abide by a prior promise concerning the use of the evidence seized from Drew's Comfort Inn hotel room. See Def.'s Mem. at 18, 21, 25. The Court will address the defendant's first and second arguments together and then address his third argument.

**1. False Representation in Warrant Application, Rule 41 Violation, and Outrageous Government Conduct Challenges**

The Court first considers the defendant's argument that his FPD appellate counsel should have raised an argument to the Third Circuit contending that the government violated his Fifth Amendment right by providing "false and misleading representations in securing the warrant,"

Def.'s Mem. at 18, by violating Rule 41(b) of the Federal Rules of Criminal Procedure, see id. at 21, and by engaging in outrageous government misconduct, see id. at 21–27. In response, the government argues that the defendant had no standing to challenge the warrant and points to the Court's opinion stating as much during the pre-trial phase of the defendant's case. See Gov't's Opp'n at 10 (citing 2017 Suppression Order at 2–5). For the following reasons, the Court agrees with the government that the defendant lacked standing to challenge the warrant application and the procedure employed to obtain the warrant, since the defendant had no reasonable expectation of privacy interest in the area that was searched or the evidence that was seized.

In 2017, before the defendant's trial commenced, he argued that the evidence obtained from the Comfort Inn should have been suppressed pursuant to both the Fourth and Fifth Amendments, as well as Federal Rule of Criminal Procedure 41, because, inter alia, the "warrant application contained affirmative and material misrepresentations concerning the government's 'source of information,' which was not a human informant, as the application strongly suggests, but a wiretap[.]" See Def.'s Pretrial Mem. at 1, 8, 29 (capitalization modified). Before resolving the defendant's motion, the Court issued a show cause order requiring the defendant to explain why he had standing to bring his Fourth Amendment and Rule 41 claims challenging the warrant application and the warrant acquired for the search of Drew's hotel room. Order at 2 (March 23, 2017), ECF No. 691. After the defendant and the government responded to the Court's show cause order, the Court denied the defendant's motion to suppress and his motion to dismiss the indictment, with explicit reference to his Fourth Amendment and Rule 41 claims, finding that "the defendant ha[d] not alleged any circumstances sufficient to demonstrate that he had a reasonable expectation of privacy in regards to the [Comfort Inn h]otel guest room and therefore

standing under federal law to challenge the search of the room." 2017 Suppression Order at 2, 5, 12.[4]

Additionally, although the defendant invoked the Fifth Amendment and prosecutorial misconduct in his pretrial filings, see Def.'s Pretrial Mem. at 8, the Court treated those arguments as dependent on the underlying search and suppression challenge and resolved them through its Fourth Amendment and Rule 41 standing analysis. See 2017 Suppression Order at 5–6. The Court declined to reach the merits of the defendant's allegations of governmental misconduct, explaining that such an inquiry would require an assessment of the underlying Fourth Amendment and Rule 41 claims, in which the defendant lacked standing. Id. at 5. Accordingly, the Court "den[ied] the defendant's motion to suppress the heroin recovered in the hotel guest room and to dismiss the indictment on the basis of prosecutorial misconduct." Id. at 6.

Now, in his § 2255 motion, the defendant attempts to resurrect his Fifth Amendment and prosecutorial misconduct claims under the cloak of an ineffective assistance of counsel claim. The defendant recognizes that "this Court may have been on sound footing in ruling that [he] had no standing to challenge the government misconduct under the Fourth Amendment," Def.'s Mem. at 22, but claims that he "was entitled to vindication of his rights under the Fifth Amendment," id, and "[t]he absence of any expectation of privacy . . . was irrelevant to [his] claim that the government violated his rights under the Fifth Amendment." Id. at 24. The Court does not agree.

[4] Both the March 23rd and April 27th Orders considered all other briefs in addition to the defendant's memorandum in resolving the defendant's motion to suppress, including (1) the government's Response to Defense Pretrial Motions ("Gov't's Opp'n to Pretrial Motions"), ECF No. 675; (2) the defendant's Reply Memorandum of Law ("Def.'s Reply"), ECF No. 679; (3) the defendant's Response to Order to Show Cause ("Def.'s Show Cause Reply"), ECF No. 695; and (4) Government's Response to Defendant's Letter Brief ("Gov't's Reply"), ECF No. 700. Order at 1 n.1 (March 23, 2017), ECF No. 691; 2017 Suppression Order at 1 n.1.

Courts in this Circuit have rejected similar efforts to reframe search and suppression challenges by "repackaging" them as due-process claims. See e.g., McCulligan v. Mazurkiewicz, 2:12-cv-3271, WL 2449184, at *12 (E.D. Pa. June 6, 2013) (concluding that petitioner's due process argument was "merely a repackaging of [his] Fourth Amendment claim with a due process label"). And, the Supreme Court has explained that, similar to its decisions under the Fourth Amendment, a defendant is precluded from succeeding on a substantive due process claim that is premised solely on some third-party's constitutional rights. See United States v. Payner, 447 U.S. 727, 735 (1980) (in a case that raised a Fifth Amendment Due Process Clause claim and considered the supervisory power of federal courts, the Court held that "the supervisory power does not authorize a federal court to suppress otherwise admissible evidence on the ground that it was seized unlawfully from a third party not before the court"). Moreover, other circuit courts of appeal have been presented with a similar issue that the defendant raises with this Court and similarly held that the defendant lacked standing. See e.g., United States v. Anderson, 772 F.3d 969, 975 (2d Cir. 2014) (holding that the defendant's substantive due process claim failed because it challenged the admissibility of "physical evidence obtained through a flagrantly illegal search directed at someone other than the defendant . . . notwithstanding the fact that the conduct of the [officers] was deceptive, coercive and illegal"); United States v. Dyke, 718 F.3d 1282, 1285, 1288 (10th Cir. 2013) ("[W]e are not to reverse convictions simply to punish bad behavior by governmental agents, but should do so only when the bad behavior precipitates serious prejudice to some recognized legal right of the particular defendant before us"); United States v. Teague, 469 F.3d 205, 210 (1st Cir. 2006) (rejecting the defendant's claim that the use of evidence recovered through an illegal search of a third party's vehicle violated the defendant's due process rights); United States v. Noriega, 117

F.3d 1206, 1214 (11th Cir. 1997) (holding that "whatever harm Panamanian civilians suffered during the armed conflict that preceded [the defendant's] arrest cannot support a due process claim in his case"); United States v. Valdovinos–Valdovinos, 743 F.2d 1436, 1437–38 (9th Cir. 1984) (per curiam) (holding that the defendants were "preclude[d] [ ] from raising due process violations allegedly suffered by third parties and because any due process violations in the instant controversy involved the Fifth Amendment rights of the two [undocumented persons], the defendant lacked standing to challenge the[] alleged violations") (citation modified).[5]

Accordingly, consistent with the Court's prior ruling concluding that the defendant lacked a reasonable expectation of privacy to challenge the warrant application and search of Drew's Comfort Inn hotel room, see 2017 Suppression Order at 5–6, the Court again concludes that the defendant's Fifth Amendment challenge would have failed an appellate challenge. Therefore, because the defendant's claim lacks merit, the defendant cannot show that his

[5] For this same reason, the defendant's claim that his appellate counsel was ineffective for failing to raise a due process claim based on alleged outrageous government conduct also fails. See Def.'s Mem. at 21. Assuming arguendo that the defendant's claim alleging outrageous government conduct was preserved in this case, which the Court does not find, the defendant's claim would still have failed because his claim is premised on the alleged false representation in the warrant application and the government's decision to seek a federal warrant from a state magistrate judge rather than a federal magistrate judge, see id. at 23–25, and the Court has concluded that the defendant lacks standing to challenge this underlying conduct.

Additionally, even assuming that the defendant had standing to challenge the warrant application, the defendant's claim of outrageous government conduct would still fail because, although the Third Circuit recognizes the possibility that the conduct of law enforcement agents can rise to the level of outrageousness, it has concluded that the "challenged conduct must be shocking, outrageous, and clearly intolerable." United States v. Nolan-Cooper, 155 F.3d 221, 230–231 (3d Cir. 1998). In fact, the bar is so high that the Third Circuit points out that "[outrageous government conduct] has remained viable in this Circuit, though" it is rarely successful. Id. at 224; see id. at 244 (holding that an undercover Department of Internal Revenue Services agent cultivating a close relationship for thirteen months that culminated in sexual intercourse is "reprehensible," but still insufficient to constitute outrageous governmental conduct); but see Rochin v. California, 342 U.S. 165, 174 (1952) (finding a due process violation where the defendant's stomach had been forcibly pumped so that the police could attempt to obtain incriminating evidence); United States v. Twigg, 588 F.2d 374–80 (3d Cir.1978) (holding that government's involvement in conceiving, supplying, and directing a drug laboratory in order to "apprehend[] illegal drug traffickers" constituted outrageous government conduct barring prosecution). If the Court were to address the defendant's claim of outrageous government conduct, it would find that the defendant has not met the theory's high bar because his case is unlike the cases in which the claim has been successful. Accordingly, his appellate counsel was not deficient, nor did she prejudice him in deciding not to raise this issue in his appeal.

appellate counsel was deficient, or that he suffered any prejudice as a result of his appellate counsel's decision not to raise it as a separate merits argument in his appeal.

### 2. The Government's Failure to Abide by Its Promise in His Co-defendant's Case

The Court now turns to the defendant's claim that his appellate counsel should have argued that his due process rights were violated because the government failed to abide by its promise in Drew's case made to the Third Circuit. See Def.'s Mem. at 25–26. Specifically, as already noted, while Drew's appeal challenging the warrant application was before the Circuit, both parties agreed that Drew's conviction should be vacated and his case remanded to the district court before the Circuit resolved the merits of Drew's appeal. See generally Gov't's Mot. to Vacate. As part of the government's motion to vacate Drew's conviction, it represented that "it would not offer the evidence seized from the hotel room pursuant to the search warrant issued . . . at any further proceedings." Id. ¶ 3. The defendant contends that the government broke its promise by using the evidence against him. See Def.'s Mem. at 26. The government responds that the "any further proceeding" promise in its motion to vacate was limited to those proceedings involving Drew. See Gov't's Opp'n at 17.

In making his argument, the defendant relies primarily on United States v. Liburd as the basis for his position that the break of a promise by the government is a serious due process violation. See Def.'s Mem. at 25–26; United States v. Liburd, 607 F.3d 339 (3d Cir. 2010) (finding a due process violation where prosecutor breached an explicit promise made to the defendant on which the defendant relied in shaping trial strategy). However, the Court does not find Liburd instructive in this case. The prosecutor in Liburd unequivocally promised, during pre-trial proceedings, not to rely on "any statement" Liburd made to a law enforcement agent

related to the contents of an item allegedly found in Liburd's bag. Id. at 341. The trial court in that case relied on this promise and declined to rule on the defendant's motion to suppress. Id. at 341–42. Liburd thereafter shaped his trial strategy around that promise as well. Id. at 341–42. However, after the trial began, the prosecution presented to the jury on three occasions the statement it promised not to introduce. Liburd then moved for a mistrial, which the district court denied. Id. The Circuit reversed the district court's decision, finding that "the entire trial record was corrupted by [the prosecution]'s misconduct" and that Liburd "was lulled into pursuing a defense that was dead on arrival once [the prosecution] broke [its] promise." Id. at 345–46. Based on this record, the Circuit concluded that Liburd's Fifth Amendment rights had been violated and vacated his conviction.

Here, in contrast, the government's statement not to use the evidence recovered in the Comfort Inn hotel room at "any further proceeding" was made in Drew's case and was made in circumstances in which Drew had an alleged personal privacy interest in the hotel room and the evidence that was seized in the room. See Gov't's Opp'n at 16. The Court's conclusion would be to the contrary if it were reviewing Drew's case and the government violated its promise not to use the evidence against Drew following the remand. Accordingly, the Court is unpersuaded by the defendant's argument that the government's agreement before the Third Circuit in Drew's case was intended to also apply to his case. Therefore, because the defendant's argument lacks merit, it does not raise a due process violation, and any such argument would have failed had it been raised. And, because the defendant's appellate counsel "cannot be deemed ineffective for failing to raise a meritless claim," Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir.2000), the defendant cannot establish that his appellate counsel's representation was deficient or that it

prejudiced him. See Strickland, 466 U.S. at 694 (requiring that a defendant show that "but for counsel's unprofessional errors, the result of the proceeding would have been different").

**B. The Defendant's Request for a Certificate of Appealability**

A certificate of appealability may issue only upon "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "When [a] district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). On the other hand, when a district court has rejected a constitutional claim on its merits, a petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong, a demonstration that [ ] includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Id. (citation omitted).

The defendant argues for the first time in his reply brief that a certificate of appealability should issue so that the Third Circuit can determine whether the defendant was denied the right to effective assistance of appellate counsel due to his FPD appellate counsel's decision not to bring a Fifth Amendment due process challenge to the warrant application and evidence obtained in the Comfort Inn hotel. See Def.'s Reply at 6–7. The government contends that a certificate of appealability should not issue "because no reasonable jurist would question that a different result should have been reached" in this case. Gov't's Opp'n at 19.

The Court concludes that a certificate of appealability must be denied because jurists of reason would not find it debatable whether dismissal of the defendant's petition is correct since the Court denies the defendant's petition largely on standing grounds, and in any event, the defendant fails to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see Grim v. Vincent, No. 08-cv-1129 (LPL), 2009 WL 10868523, *2 (W.D. Pa. Mar. 2, 2009) (denying a certificate of appealability because the petitioner's claim was moot); Freet v. Kane, 13-cv-86 (LPL), 2016 WL 1392499, *3 (W.D. Pa. Apr. 8, 2016) (denying a certificate of appealability because the petitioner lacked standing pursuant to the Fourth and Fifth Amendments); Williams v. Martinez, 06-cv-735, 2006 WL 2588726, *1, 7 (Sept. 7, 2006) (adopting report and recommendation to deny petitioner's request for a certificate of appealability because the petitioner lacked standing to bring his claims).

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that it must deny the defendant's motion.

**SO ORDERED** this 22nd day of September, 2026.[6]

s/Reggie B. Walton
REGGIE B. WALTON
United States District Judge

[6] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.